WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela C. Sullivan,<br><br>    Plaintiff,<br><br>v.<br><br>Bank of America, National Association,<br><br>    Defendant. | No. CV-13-01166-TUC-BGM (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Defendant Bank of America, N.A.'s Motion for Summary Judgment (Doc. 75). Defendant has also filed a Statement of Facts in Support of Its Motion for Summary Judgment ("SOF") (Doc. 76). Plaintiff has responded (Doc. 87) and filed her separate Statement of Facts in Support of Response to Motion for Summary Judgment ("SSOF") (Doc. 88), and Defendant replied (Doc. 91). Additionally, Plaintiff filed a Citation of Supplemental Legal Authorities (Doc. 92). As such, the motion is fully briefed and ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Macdonald for Report and Recommendation. On August 27, 2016, Judge Macdonald heard oral argument. Minute Entry 8/27/2016 (Doc.

93). The Magistrate Judge recommends that the District Court grant Defendant's motion for summary judgment (Doc. 75).

## I.   FACTUAL BACKGROUND

### A.   *Plaintiff's Employment at Defendant Bank of America, N.A.*

Plaintiff Pamela C. Sullivan began employment with Defendant Bank of America, N.A. ("BANA") in October, 1992 as a teller in Tucson, Arizona. Def.'s SOF (Doc. 76), Sullivan Depo 9/30/2014 (Exh. "1") at 15:10–12, 16:13–22. Subsequently, Ms. Sullivan worked at BANA as a senior teller, personal banker, a banking center manager without the title, promoted to a banking center manager ("BCM"), consumer market manager ("CMM"), and finally consumer marketing executive ("CME") for the Southern Arizona Region. Pl.'s SSOF (Doc. 88), Sullivan Depo. 9/30/2014 (Exh. "6") at 17:1–27:18. In late 2008, Dwain Moss became Ms. Sullivan's direct supervisor, and remained so through 2010. Def.'s SOF (Doc. 76), Exh. "1" at 27:7–11, 30:9–13, 75:17–20, 76:9–13.

Mr. Moss was born in 1946, and as such was sixty-four (64) years old in 2010. Def.'s SOF (Doc. 76), May Aff. (Exh. "2") at ¶ 7. Walter Elcock was Moss's supervisor. *Id.*, Exh. "1" at 49:4–5. Mr. Elcock was born in 1947, and twenty-three (23) years older than Ms. Sullivan. *Id.*, Exh. "1" at 50:8–11 & Exh. "2" at ¶ 7. Accordingly, both Mr. Moss and Mr. Elcock were more than twenty (20) years older than Ms. Sullivan. *Id.*, Exh. "1" 50:12–15. In addition to Ms. Sullivan, Mr. Moss supervised six (6) other CMEs, three of whom were older than Plaintiff. Pl.'s SSOF (Doc. 88) Sullivan Decl. at ¶ 10; *see also* Def.'s SOF (Doc. 76), Exh. "2" at ¶ 7.

- 2 -

Plaintiff was born on November 22, 1970. Def.'s SOF (Doc. 76), Exh. "1" at 7:7–8. At the time Plaintiff was relieved of her CME duties on October 1, 2010, she was thirty-nine (39) years old. Def.'s SOF (Doc. 76), Exh. "1" at 161:7–10. After being relieved of her CME duties, Plaintiff continued her employment with BANA until November 30, 2010. Pl.'s SSOF (Doc. 88), Sullivan Decl. at ¶ 12. Plaintiff turned forty (40) years old on November 22, 2010. Def.'s SOF (Doc. 76), Exh. "1" at 161: 9–10.

### B. *Plaintiff's Performance 2008–2009*

BANA assessed Ms. Sullivan's performance, in part via quarterly performance assessments. Def.'s SOF (Doc. 76) ¶ 12. A score in the range of 0–3.99 indicated the employee was not meeting performance expectations; a score of 4–6.99 was meeting expectations; and 7–10 resulted in an exceeding expectations rating. *Id.*; *see also* Def.'s SOF (Doc. 76), Exh. "1" at 53:16–54:5. Plaintiff asserts that although she was shown certain documents at the time of her deposition, "[t]he ratings and scores on them were not shown or given to [her] during [her] BOA employment so [she] could not protest or appeal them at the time; . . . [t]hey do not bear [her] signature or acknowledgement and could have been created after [she] filed [her] EEOC charge; . . . [t]hey are inaccurate and not reflective of [her] actual performance; [and] . . . [her] BOA job performance at all times was satisfactory or better." Pl.'s SSOF, Sullivan Decl. at ¶ 7. Plaintiff did, however, recall receiving a score corresponding to whether she exceeded, met, or did not meet expectations. Def.'s SOF (Doc. 76), Exh. "1" at 53:16–19.

In 2008, according to two of her quarterly assessments, Plaintiff failed to meet Bank expectations. Def.'s SOF (Doc. 76), Exh. "1" at 56:12–57:18, 64:11–14.

- 3 -

Plaintiff's performance assessment for January 1, 2009 through March 31, 2009 indicated that she was not meeting expectations in the "Consumer and Small Business Core Sales Units to Goal" category. *Id.*, Exh. "1" at 59:9–60:22. This performance quantification was based on objective criteria. *Id.*, Exh. "1" at 60:1–19. During this same quarter, Plaintiff did not meet expectations in the "Credit Booked" goal and the "Relationship Deepening Variability" goal.[1] *Id.*, Exh. "1" at 60:23–61:23.

### C.  *Plaintiff's 2010 Performance*

Regarding her leadership abilities in 2010, Plaintiff testified that she "knew [she] needed to perform better in certain areas[.]" Def.'s SOF (Doc. 76), Exh. "1" at 156:2–16. On or about June 14, 2010, Plaintiff met in person with Dwain Moss. *Id.*, Exh. "1" at 113:6–11. During this meeting, Mr. Moss discussed some of his concerns about Ms. Sullivan's performance. *Id.*, Exh. "1" at 113:21–25. Plaintiff testified that Mr. Moss told her that "he wanted more visibility [of her] in the [Green Valley market,]" and wanted her "to turn around" her performance numbers related to consumer small business checking since she had "dropped a little bit." *Id.*, Exh. "1" at 115:6–116:5. Plaintiff further testified that her "market wasn't doing as well as [Mr. Moss] wanted it to in consumer and small business[.]" *Id.*, Exh. "1" at 115:21–116:5. During the same meeting, Mr. Moss asked Ms. Sullivan to develop a personal action plan to improve her

---

[1] For the reasons discussed in the previous paragraph, Plaintiff continues to object to the metrics discussed. Additionally, she states that BANA "set impossible goals and metrics for its CMEs, including [her]self, as a means of motivating employees and having a basis to terminate employees it might wish to terminate for non-performance reasons. This was common knowledge among BOA employees and supported by the BOA performance statistics." Pl.'s SSOF, Sullivan Decl. ¶ 7(E). The Court notes that beyond this bare assertion, Plaintiff has not provided evidence to support her statements.

- 4 -

performance. Def.'s SOF (Doc. 76), Exh. "1" at 113:21–25, 115:6–20, 117:4–9, 151:12–15 & Sullivan Personal Plan E-mail 6/29/2010 (Exh. "3"). Plaintiff summarized Mr. Moss's request as follows: "you're not doing well in this area, I need you to improve it and come up with a plan on how you're going to do it." Def.'s SOF (Doc. 76), Exh. "1" at 123:14–18. On June 29, 2010, Plaintiff e-mailed her personal performance plan to Mr. Moss. *Id.*, Exh. "1" at 117:4–9 & Exh. "3." In July of 2010, Mr. Moss and his Business Support Executive, Mike Rogers, again met with Ms. Sullivan to discuss her performance issues.[2] *Id.*, Exh. "1" at 113:6–20 & Rogers Aff. (Exh. "4") at ¶¶ 4–5. As of August 23, 2010, Plaintiff was not meeting Bank performance expectations in several areas.[3] *Id.*, Exh. "1" at 142:19–143:1, 157:4–12, Southwest Region Heat Maps—Exhibit "9" to Sullivan Depo. (Exh. "5").

### D. *Transitional Assignment Agreement*

On October 1, 2010, Mr. Moss and Mr. Rogers again met with Ms. Sullivan. Def.'s SOF (Doc. 76), Exh. "1" at 157:13–158:14 & Exh. "4" at ¶ 6. Mr. Moss took the lead during this meeting. *Id.*, Exh. "1" at 159:6–8 & Exh. "4" at ¶ 6. Mr. Moss informed Ms. Sullivan that she was being relieved of her CME duties and placed on a sixty (60) day transition period to find another job either within BANA or outside. *Id.*, Exh. "1" at

---

[2] Ms. Sullivan objects to Defendant's characterization of her performance issues as "continuing," maintaining that her "BOA job performance at all times was satisfactory or better." Pl.'s SSOF, Sullivan Decl. at ¶ 7.

[3] Ms. Sullivan denies this allegation maintaining that she had not seen the documents presented at her deposition prior to discovery in this litigation. Pl.'s SSOF (Doc. 88) at ¶ 30. In her deposition testimony, however, she acknowledges that "as of 8-23, I was not meeting expectations in more than two categories. I was red, yes." Def.'s SOF (Doc. 76), Exh. "1" at 142:24–143:1.

- 5 -

159:1–5. Neither Mr. Moss nor Mr. Rogers made any comments to Plaintiff that she found to be inappropriate or offensive.[4] *Id.*, Exh. "1" at 160:5–7.

On October 1, 2010, Ms. Sullivan was given a Transitional Assignment Agreement ("TAA").[5] Def.'s SOF (Doc. 76), Exh. "1" at 161:19–25 & Transitional Assignment Agreement (Exh. "6"). The TAA states "effective October 1, 2010, you will be relieved of the regular, day-to-day responsibilities and duties of your position as Consumer Market Executive[.]"[6] Def.'s SOF (Doc. 76), Exh. "6" at 1. Plaintiff applied for other jobs at the Bank, but was unable to find another job internally because of her prior poor performance ratings. *Id.*, Exh. "1" at 176:6–10. Plaintiff considered applying for a teller position.[7] *Id.*, Exh. "1" at 171:10–172:22. Plaintiff claims that Mr. Rogers and Human Resources Executive Brad Kimball told her that she was overqualified for the teller position. *Id.*, Exh. "1" at 171:10–172:22. Plaintiff believes this statement was an ageist remark. *Id.*, Exh. "1" at 171:10–172:22, 186:11–187:1. On November 30, 2013,

---

[4] Ms. Sullivan admits this allegation, but asserts that the testimony was incomplete in capturing her shock and upset. *See* Pl.'s SSOF (Doc. 88) at ¶ 33. Ms. Sullivan's emotional upset, however, is not material to the fact that neither Mr. Moss nor Mr. Rogers said anything inappropriate during their meeting.

[5] Ms. Sullivan denies that she "entered into" a Transitional Assignment Agreement ("TAA"). *See* Pl.'s SSOF (Doc. 88) at ¶ 34 & Sullivan Depo.9/30/2014 at 184:20–185:22. Irrespective of whether Ms. Sullivan signed or agreed to the TAA, the agreement states that it reflects "understandings regarding the terms of conditions of [Ms. Sullivan's] continued employment with Bank of America[.]" Def.'s SOF (Doc. 76), Exh. "6" at 1.

[6] Ms. Sullivan admits that this statement is accurately derived from the TAA, but renews her objections for the reasons stated in FN 5.

[7] Ms. Sullivan reiterates that she applied for several positions within the Bank to no avail, as encapsulated in the previous sentence.

Plaintiff had not yet found another job and the TAA expired. Def.'s SOF (Doc. 76), Exh. "1" 176:18–177:2, 185:5–14; *see also*, Pl.'s SSOF (Doc. 88), Sullivan Decl. at ¶ 19.

### E. *Plaintiff's Replacement*

In March 2011, Plaintiff was replaced by Susan Farmer. Def.'s SOF (Doc. 76), Exh. "4" at ¶ 7. Ms. Farmer's date of birth is December 19, 1961, and as such, she is nine (9) years older than Ms. Sullivan.[8] *Id.*, Exh. "2" at ¶ 7.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id*. In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Moreover, a "mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at

---

[8] Plaintiff's objection to this statement is purely legal argument.

2512.  The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

### III.   ANALYSIS

#### A.   *Disparate Treatment*

The Age Discrimination in Employment Act ("ADEA") makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual [who is at least 40 years old] . . . because of such individual's age."  29 U.S.C. § 623(a)(1); *see also*  29 U.S.C. § 631(a).  Plaintiff's sole claim is that her termination was "because of" her age. *See* Complaint (Doc. 1).  Plaintiff's claim that BANA "treats some people less favorably than others because of their [age]" is a "disparate treatment" claim.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 113 S.Ct. 1701, 1704, 123 L.Ed.2d 338 (1993).  "Under a 'disparate treatment' theory of discrimination, a plaintiff in an ADEA case can establish age discrimination based on: (1) 'circumstantial evidence' of age discrimination; or (2) 'direct evidence of age discrimination."  *Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012).  "Direct Evidence, in the context of an ADEA claim, is defined as evidence of conduct or statements by persons involved in the decision – making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the *fact finder* to infer that that attitude was more likely

- 8 -

than not a motivating factor in the employer's decision." *Frances v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004)) (alterations and emphasis in original).  Ms. Sullivan has not presented any direct evidence of discrimination.[9]

"ADEA claims that are based on circumstantial evidence of discrimination [are evaluated] by using the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citations omitted). Plaintiff "must first establish a prima facie case of discrimination[;] [i]f [she does], the burden then shifts to [Defendant] to articulate a legitimate nondiscriminatory reason for its employment decision[;] [t]hen, in order to prevail, [she] must demonstrate that [Defendant's] alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

### B.   *The Prima Facie Case*

Plaintiff can establish "a prima facie case of disparate treatment by demonstrating that [s]he was: (1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) replaced by a substantially younger employee or discharged under

---

[9] Ms. Sullivan does allege that Mr. Rogers and Mr. Kimball stated that she was "overqualified" for a teller position, but this single remark is not direct evidence of discrimination.  *See Coleman v. Quaker Oats, Co.*, 232 F.3d 1271, 1284 (9th Cir. 2000) (analyzing use of the term "promotable" as circumstantial evidence of discrimination).

- 9 -

circumstances otherwise giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citations omitted).

### 1. Plaintiff's Age

The Parties disagree what constitutes the adverse employment action in this case. Plaintiff urges that it was her termination, which occurred eight (8) days after her fortieth birthday. Pl.'s Response (Doc. 87) at 6–10. Defendant asserts that it was the Transitional Assignment Agreement, which occurred when Plaintiff was thirty-nine (39). Def.'s Mot. for Summ. J. (Doc. 75) at 8–9; *see also* Def.'s Reply (Doc. 91). For purposes of this motion only, and without deciding, the Court will accept that Plaintiff was forty (40) for purposes of establishing her prima facie case.

### 2. Job Performance

Subjectively, Plaintiff believes that her "BOA job performance at all times was satisfactory or better." Pl.'s SSOF, Sullivan Decl. at ¶ 7. The metrics and testimony submitted by BANA suggest otherwise. Def.'s SOF (Doc. 76), Exh. "1" at 56:12–57:18, 59:9–61:23, 64:11–14, 115:6–116:5, 117:4–9, 151:12–15, 156:2–16; *see also* Def's SOF (Doc. 76), Sullivan Personal Plan (Exh. "3") & Southwest Region Heat Maps (Exh. "5") & Transitional Assignment Agreement (Exh. "6"). The evidence demonstrates that Ms. Sullivan had performance issues at various times during 2008, 2009, and 2010. *Id*. For purposes of establishing her prima facie case, the Court will again accept that Ms. Sullivan was performing adequately.

### 3. Termination

It is undisputed that Plaintiff was terminated on November 30, 2010.

### **4. Replacement**

It is also undisputed that Ms. Sullivan was **not** replaced by a substantially younger employee, but rather an individual nine (9) years her senior. Ms. Farmer stayed with the bank three (3) years after replacing Ms. Sullivan until she retired in 2014.

Ms. Sullivan asserts that five (5) of the six (6) CMEs who were worked with her and were over forty (40) are no longer with the bank. Pl.'s Response (Doc. 87) at 14–15. BANA corrects this allegation, stating that of these six (6) CMEs, two (2) are still employed with BANA, two (2) retired, and one (1) resigned. Def.'s Reply (Doc. 91) at 5. Only one was terminated. *Id.* The Court finds that this statistical evidence does not support Plaintiff's claim of age discrimination.

Plaintiff further asserts that her personal belief that she performed in a satisfactory manner is enough to create a question of fact sufficient to defeat summary judgment. Pl.'s Response (Doc. 87) at 11. The Ninth Circuit Court of Appeals, however, has explicitly stated that a Plaintiff's "subjective personal judgments of [her] competence alone do not raise a genuine issue of material fact." *Coleman*, 232 F.3d at 1285 (quoting *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996)).

As previously mentioned, Plaintiff asserts that Mr. Rogers and Mr. Kimball stated that she was "overqualified" as evidence of age discrimination. Although the Ninth Circuit Court of Appeals has "recognized that 'overqualification' as a reason for firing an employee may be a mask for age discrimination, an employer may choose not to hire an employee because he is overqualified for a position without violating the ADEA." *Coleman*, 232 F.3d at 1290 (citations omitted). There is no argument that Ms. Sullivan is

overqualified to be a teller—the position that she started in eighteen years prior. As such, this comment does not suggest ageism.

Finally, Plaintiff asserts that the temporal proximity of her termination to her fortieth birthday is evidence of age discrimination. Plaintiff further suggests that her termination was motivated by Defendant's wish to save on her retirement. Defendant has presented evidence that Ms. Sullivan's performance needed work in 2008, 2009, and 2010. She was asked and did submit a personal action plan to help improve that performance. Approximately fifty-two (52) days *prior* to her fortieth birthday, Ms. Sullivan was given a Transitional Assignment Agreement modifying the terms of her employment. Def.'s SOF (Doc. 76), Exh. "1" 161:19–25 & Exh. "6." There is no evidence before the Court to suggest that Ms. Sullivan's termination was related to her age. Moreover, two of Ms. Sullivan's CME co-workers retired from BANA.

Ms. Sullivan has failed to present any evidence that would suggest age was a motivating reason for her termination. As such, Ms. Sullivan cannot establish a prima facie case for discrimination.

### C.     *Pretext*

Even if the Court were inclined to accept that Ms. Sullivan could establish a prima facie case for age discrimination, she cannot show that BANA's reasons for her termination were pretextual.

Defendant has presented evidence that Ms. Sullivan was not meeting its performance expectations. Def.'s SOF (Doc. 76), Exh. "1" at 56:12–57:18, 59:9–61:23, 64:11–14, 115:6–116:5, 117:4–9, 151:12–15, 156:2–16; *see also* Def's SOF (Doc. 76),

- 12 -

Sullivan Personal Plan (Exh. "3") & Southwest Region Heat Maps (Exh. "5") & Transitional Assignment Agreement (Exh. "6"). Ms. Sullivan was asked to create a performance plan, and ultimately given a sixty-day transitional agreement. *Id.* As such, Defendant has put forth legitimately, non-discriminatory explanations for Ms. Sullivan's termination.

"To survive summary judgment, the burden is on [Ms. Sullivan] to 'produce enough evidence to allow a reasonable factfinder to conclude either: (a) that the alleged reason for [her] discharge was false, or (b) that the true reason for [her] discharge was a discriminatory one.'" *Coleman*, 232 F.3d at 1291 (quoting *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996)). "To show pretext using circumstantial evidence a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). Plaintiff cannot meet her burden. As discussed in Section IV.B.4, *supra*, the circumstantial evidence relied upon by Plaintiff, does not evidence discrimination based on age. *See Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1159 (analyzing fourth prima facie element in context of assessing pretext). Accordingly, Defendant is entitled to summary judgment.

## IV.   CONCLUSION

For the reasons discussed, *supra*, Defendant Bank of America, N.A.'s Motion for Summary Judgment (Doc. 75) should be granted.

- 13 -

## V.  RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order GRANTING Defendant Bank of America NA's Motion for Summary Judgment (Doc. 75).

Any written objections to this Report and Recommendation shall be filed and served **on or before September 7, 2016**.  Any response to another party's objections shall be filed and served **on or before September 14, 2016**.  No replies shall be filed unless leave is granted from the District Judge.  If objections are filed, the parties should use the following case number: **CV-13-01166-TUC-JGZ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 29th day of August, 2016.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge